## Case No. 7,672.

### KELLY v. JOHNSON et al.

[3 Wash. C. C. 45.][1]

Circuit Court, D. Pennsylvania. April Term, 1811.

CARRIERS—EMBARGO—REFUSAL TO CARRY—RIGHT TO STORAGE—EFFECT OF BILL OF LADING.

The plaintiff's agent shipped a quantity of flaxseed, on board the vessel of the defendants, to be delivered to the plaintiff in Ireland, and before the vessel broke ground, notice of the embargo was given, when the captain refused to sign a bill of lading for the property; but gave a receipt, stating that a bill of lading would be given, when he should be permitted to proceed on the voyage. A survey was afterwards held on the cargo, and on the report of the surveyors and their recommendation, it being in a spoiling condition, it was landed, and was afterwards received by the plaintiff; he paying to the defendants the sum of one thousand dollars, which they claimed for storage, wharfage, and other expenses incurred by having the cargo on board their vessel; the plaintiff reserving his right to recover back the said sum, if the defendants were not legally entitled to it. The court *held*, that the decision of the referees, who had awarded in favour of the defendants the sum paid to them by the plaintiff, was erroneous, and the award of the referees was set aside.

Exception to the report of referees. The case was, that Warder, of this city, on the 24th of December, 1807, shipped on board of a vessel belonging to the defendants [Johnson & M'Kean], a quantity of flaxseed, to be carried to the plaintiff in Ireland; and the day after, and before the vessel had broke ground, notice of the embargo was received at Philadelphia. In consequence of this, the captain refused to sign bills of lading, but gave a receipt for the cargo, promising to sign bills of lading as soon as he should be permitted to proceed on the voyage. Things remained in this situation, until the 20th of January, 1809, when a survey of the vessel and cargo was made, under an order of the district court, and a report was made that the cargo was become spoiled and unmerchantable, that it was injuring the vessel, and advising that the cargo should be unladed. The defendants, upon this, insisted that Warder should receive

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

the cargo, which he refused. The defendants threatened to sell the cargo, for the benefit of those it might concern; upon which Warder consented to receive the cargo, and advertised it for sale. The defendants refused to deliver the cargo to the purchaser, until they were paid their account, about 1000 dollars, for storage, wharfage, and other expenses and losses to which they had been exposed, by having had the cargo so long on board; and finally, it was agreed that the defendants should receive the said sum, but without prejudice to the plaintiff's right to claim the same, to be decided in an amicable action. The referees allowed the defendants' account to the amount of about 1000 dollars; and one of them, upon his examination, stated, that the vessel, but for having this cargo on board, might have been employed in the coasting trade—that the vessel was injured by keeping it on board, and that they considered the sum allowed, only as a fair compensation for their losses.

Mr. Dallas, for defendants.

Mr. Hallowell cited the following cases, to show that no freight is due, till the vessel breaks ground: Abb. Shipp. 179, 207; and that an embargo does not dissolve, but only suspends, the contract to carry a cargo, 8 Term R. 262; also, Odlin v. Insurance Co. of Pennsylvania [Case No. 10,433], and 3 Johns. 321.

WASHINGTON, Circuit Justice. If regular bills of lading had been signed, and no law had afterwards passed to affect the contract of affreightment, it is admitted, that the defendants were bound to carry the goods, as soon as the embargo was removed. But, it is said, that the refusal of the captain to sign bills of lading and the nature of his receipt, made everything executory, and varies this from most other cases. We think quite otherwise. The meaning of the receipt is plainly this, that as the embargo operated, for the present, to interrupt the voyage, and to suspend the effect of a bill of lading, if it were given, it would be unnecessary at that time to sign them; but, that as soon as the restrictions should be removed, the captain would perform his contract to carry the cargo, and would then sign the bills of lading. This agreement being made after the existence of the embargo was known, makes the case rather stronger against the defendants, than if bills of lading had been signed before it was known. Certainly, it does not weaken the plaintiff's case. Whether the enforcing law, passed on the 9th of January, 1809 [2 Stat. 506], can be construed to dissolve the contract, need not be determined; but if it did, it could not operate further, than to discharge the defendants from the claim of damages, for not carrying the cargo when the restrictions of the embargo should be

removed; but, certainly, not to entitle the defendants to claim freight, or any thing in the nature of it, or damages, from the plaintiff. The referees have therefore erred in a plain point of law, and the report must be set aside.